# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WELLS FARGO, N.A., *Plaintiff*, v. MARK W. GREEN & LETITIA GREEN *Defendants.* | CIVIL ACTION NO. 3:10-CV-67 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Wells Fargo, N.A. ("Wells Fargo"), successor by merger[1] to Wachovia Bank, N.A., ("Wachovia"), brought this action for damages arising out of Defendants' alleged default under a guaranty agreement. Plaintiff now moves for summary judgment (docket no. 15), seeking an award of approximately $1.5 million in damages, costs, and fees. For the reasons given herein, I will grant summary judgment in favor of the Plaintiff.

**I.**

Wells Fargo was the lender, and Rivanna Plaza, LLC ("Rivanna") was the borrower, in a loan agreement evidenced by a promissory note dated January 9, 2008, in the original principal amount of $8.3 million. As set forth in a separate, contemporaneous guaranty agreement, Defendants Mark W. Green ("Mr. Green") and Letitia Green ("Ms. Green") agreed as follows:

> [Defendants] hereby absolutely, irrevocably and unconditionally guarantee[] to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of [Rivanna] to Bank and its affiliates, including, but not limited to, all obligations under any notes, loan agreements, security agreements, letters of credit,

---

[1] Defendants had demanded proof of the merger. *See* Answer ¶ 4. Plaintiff has responded with affidavits attesting to its existence. Moreover, the merger has been well publicized. *See* Press Release, Wells Fargo, Wells Fargo and Wachovia Merger Completed (Jan. 1, 2009) *available at* https://www.wellsfargo.com/press/2009/20090101_Wachovia_Merger. Accordingly, there is no genuine dispute that Wells Fargo is the successor in interest to Wachovia.

1

> instruments, accounts receivable, contracts, drafts, leases, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, and the Loan Documents, as defined below, and all obligations of [Rivanna] to Bank or any of its affiliates under any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time), however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof.

On September 30, 2008, the parties modified the loan and note, in part to reduce the principal amount to $1.5 million. As Rivanna defaulted under the loan by failing to make required payments, Wells Fargo accelerated the obligations due, and demanded payment from Defendants. No such payment has been made.

On October 31, 2009, Wells Fargo, Rivanna, and Defendants entered a forbearance agreement ("Forbearance Agreement"). Although Defendants contend that there is some controversy whether Defendants signed the document in their individual capacities,[2] as discussed below, it is nonetheless clear that they were parties thereto. Among other things, the Forbearance Agreement contained an acknowledgment that Rivanna and Defendants had "breached their obligations and covenants under the Loan Documents, which breaches constitute Defaults" under such documents. It further acknowledged that the "principal and accrued but unpaid interest under the [note] became immediately due and payable in full . . . and the Bank had the full legal right to exercise its rights and remedies under the Loan Documents . . . ." The "Loan Documents" include the note, loan agreement, guaranty, and related documents.

On June 8, 2010, Wells Fargo, Rivanna, and Defendants entered an agreement styled "First Amendment to Forbearance Agreement" ("Amendment"). The Amendment acknowledged that "the parties hereto are all of the parties to that certain Forbearance Agreement dated October 31, 2009 . . . ." It further stated that "the Forbearance Agreement is hereby

---

[2] Wells Fargo indicates that although Defendants signed the document, their signature pages are missing from Wells Fargo's imaging system.

ratified and confirmed, and the undersigned acknowledge being bound by the Forbearance Agreement, as amended by this Amendment." All of the signatures to the Amendment were proper. As the Amendment did not change the acknowledgments of the Forbearance Agreement in any respect, it ratified Rivanna's and Defendants' admission of default.

## II.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"[T]o recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." *McDonald v. Nat'l Enters., Inc.*, 547 S.E.2d 204, (Va. 2001). Defendants have admitted that the Forbearance Agreement has terminated pursuant to its terms, and "all amounts due in connection with the Note are immediately due and payable." Compl. ¶ 12; Answer ¶ 12. In light of this admission, and the other undisputed facts, all of the *McDonald* factors are satisfied. Nonetheless, Defendants oppose the motion for summary judgment, arguing that (i) Defendants are not bound by the statement of default in the Forbearance

Agreement because they were not signatories; (ii) a "subsequent forbearance agreement" modified the rights of the parties; and, (iii) Plaintiff's calculation of interest at an 8.5% rate is improper.

**A.**

Defendants' first two arguments are unavailing. Their failure to present any evidence of the alleged "subsequent forbearance agreement" is fatal to their claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that the non-moving party may not rely on mere allegations, but rather must set out "specific facts showing that there is a genuine issue for trial."). The only document akin to a subsequent forbearance agreement that has been presented to the court is the Amendment, which does not alter, but rather ratifies Defendants' admission of default.

Second, whether Defendants signed the Forbearance Agreement is immaterial. As noted, the properly executed Amendment acknowledges and ratifies the Forbearance Agreement. Furthermore, any defense that the missing signature pages may have provided is defeated by Defendants' admission that "Rivanna, the Defendants and Wells Fargo were . . . parties to a Forbearance Agreement dated October 31, 2009." Compl. ¶ 12; Answer ¶ 12.

**B.**

The Fourth Circuit has noted that "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *Wash. Metro. Area Transit Auth. v. Potomac Invest. Props., Inc.,* 476 F.3d 231, 235 (4th Cir.2007)) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993)).

> Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a

> matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

*Id.* (quoting *Goodman*, 7 F.3d at 1126). Thus, summary judgment is only appropriate "when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." *Id.*

At issue is the extent to which the Forbearance Agreement modified the interest rate provisions of the promissory note.[3] The note provides that the "Interest Rate" applicable to the unpaid balance is "1-month LIBOR[4] plus 2.25%," but in the event of default under any of the loan documents, the "Default Rate," which is defined as "the Interest Rate plus 3%," applies. However, the Forbearance Agreement provides:

> Effective September 30, 2009, interest shall accrue on the outstanding principal balance of the Obligations at the rate of five and one-half percent (5.5%) per annum. Payment of the accrued interest shall be due monthly in arrears on the last day of each calendar month for the preceding period or portion thereof commencing on October 31, 2009 (the "Interest Payments").

Defendants contend that since the Forbearance Agreement was drafted in contemplation of Defendants' default, it follows that the 5.5% rate supplants the Interest Rate and Default Rate provisions of the note. On the other hand, Plaintiff contends that the Forbearance Agreement merely modified the Interest Rate in order to "cause base interest to accrue at 5.5% rather than 1-month Libor plus 2.25% . . . ." Plaintiff does not argue that the Default Rate provision is preserved, generally, but that "the parties implicitly agreed that the Default Rate of an additional

---

[3] Although the Amendment also contains an interest rate provision, the parties do not contend that it is material, and I will therefore not address it.
[4] LIBOR is the London Interbank Offered Rate.

3% would remain effective, but not be charged so long as the Defendants did not default under the Forbearance Agreement." Plaintiff thus concludes that since Defendants defaulted under the Forbearance Agreement, interest must accrue at the Default Rate, or 5.5% plus 3%.

The unambiguous language of the Forbearance Agreement supports Defendants' reading. By its terms, the Forbearance Agreement "constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior . . . agreements and understandings among the parties hereto relating to such subject matter." As the interest rate provision of the Forbearance Agreement "relates to" the same subject matter as the Interest Rate and Default Rate provisions of the promissory note, the 5.5% rate applies.

Moreover, parol evidence is inadmissible to vary or contradict the terms of a complete and unambiguous written contract. *See Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984). Pursuant to the integration clause, the Forbearance Agreement represents the "entire agreement" between the parties. To the extent there is arguably any ambiguity in the writing, it concerns whether the Default Rate provision of the promissory note survives *in toto*. However, the writing is clearly not susceptible of Plaintiff's interpretation that the Default Rate is inoperative, except in the event of default under the Forbearance Agreement. I am therefore proscribed from considering whether an implicit agreement to that effect exists.

Plaintiff asks that the court enter summary judgment based on the appropriate interest rate, and has submitted affidavits, calculating its award as follows:

|  |  |  |
| --- | ---: | ---: |
| Interest Rate | 5.5% | 8.5% |
| Unpaid Principal | $1,431,087.97 | $1,431,087.97 |
| Unpaid Interest | $44,164.96 | $62,172.82 |
| Costs | $6,950.00 | $6,950.00 |
| **Subtotal** | **$1,482,202.93** | **$1,500,210.79** |
| Attorney Fees/Costs | $34,439.91 | $34,439.91 |
| **TOTAL** | **$1,516,642.84** | **$1,534,650.70** |

6

As Defendants have not set forth any specific facts tending to contradict the above figures, and I conclude that the 5.5% rate applies, I will enter summary judgment for Plaintiff, and grant an award in the amount of $1,516,642.84.

### III.

For the reasons set forth above, Plaintiff's motion for summary judgment will be granted in an accompanying order.

The Clerk of the Court is directed to send a certified copy of this opinion and the accompanying order to all counsel of record.

Entered this __25th__ day of April, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE